†Michigan Central Railroad Co. v. Mary Shea, Admrx., Etc.

Violation of Rule of a Railway Creates no Liability unless it is the Proximate cause of the Injury.

   Violation of, or dispensing with a rule of a railway company, relative to notices and signals when rails are removed in repairing the track, creates no liability on the part of the company unless such violation was the proximate cause of the injury.

Haynes, J.

A petition in error has been filed by the Michigan Central Railroad Co. in this case for the purpose of reversing the judgment of the court of common pleas, rendered in favor of Mary Shea, administratrix of the estate of William Shea, deceased, against the defendant in the court of common pleas. Mary Shea, as administratrix, brought suit in the court of common pleas against the Michigan Central Railway Co. and the Wheeling & Lake Erie Railway Co., for alleged negligence that had caused the death of William Shea, who was a brakeman upon the train of the Wheeling & Lake Erie Railway, upon a line of railroad within the limits of the city, either upon the approaches to or upon the road itself, of a line known as the Belt Railway Co. The issues were joined in the case, and it proceeded to trial in the court below, and at the conclusion of the testimony the court directed a dismissal of the case as to the Wheeling & Lake Erie Railway Co., and the case then proceeded against the Michigan Central Railway Co. to final judgment, and it is only with the evidence as bearing upon the Michigan Central Railway Co. and the judgment against it that we have to do in this case. A motion for a new trial was filed, and the same was overruled. The principal grounds urged for a new trial were that the verdict was not sustained by sufficient evidence, and was contrary to law. These are the sole questions that are submitted for our consideration by the railway company upon its argument here.

The point where this injury took place is where a spur, or curve rather, of the railway company connects, as I understand, the main line of the Wheeling & Lake Erie with the Michigan Central Belt Line. Shea was a brakeman upon a train of sixteen cars which was being backed by the Wheeling & Lake Erie Railway Co. from its main line around onto the Belt. The train was a Wheeling & Lake Erie train, and the men upon it were all employees of the Wheeling & Lake Erie Co. The train was backing at a rate of about—the witnesses vary—from five or six miles an hour to twenty miles an hour. The grade was slightly an up grade. The train had crossed Mud creek bayou, and was approach-

†This case was affirmed by the Supreme Court, without report, 58 O. S., 689.

ing what is known as Manhattan crossing, which is the road leading to the old town of Manhattan, at or near the banks of Ten Mile creek. The Michigan Central Railroad Co. had some men employed in putting in some interlocking switches in the Belt Line road, and in putting in those switches they had loosened one of the rails of the track, and perhaps they had taken it out, and had replaced it and had partly fastened it. Some cars had passed over it, but it was not fully fastened in place, when the person in charge of it saw this train coming, some hundreds of feet away, and directed one of his employees, who was some two hundred feet from him, to go down and give notice to the coming cars of the danger. This man started off on a trot, as he calls it, and proceeded down to a point near the Manhattan crossing, and when he was quite near the train he then gave a signal, which was responded to by Shea, his position as brakeman being upon the rear end of the train— being in advance as the train was backing up. Shea, in the presence of this witness, repeated that signal, and as he repeated it, seized hold of the brake wheel, and gave it a turn, or a partial turn, and as he did so went off of the car and underneath it, and was run over by some of the cars before they were stopped. The allegations in the amended petition in regard to the acts of negligence were, generally, two—one, that the company had not sent back any flag, or notice, or placed any flag or notice along the side of the track to give notice to those cars coming that there was a rail taken up; secondly, that it was the duty of the engineer on that train, and of the conductor, to stop their train two hundred or eight hundred feet from the railroad crossing; that the conductor and engineer omitted to do that, and that as the result of that the train was stopped suddenly, and the decedent was thrown off. The only allegation we can see against the Michigan Central Railway Co. is that that it did not send back or cause to be placed some sort of a flag a sufficient distance from the point where this rail was taken up, to notify the coming train, so that upon seeing that, they would have plenty of time to stop their train slowly, so as to protect the lives of the persons who were upon the train.

Upon the trial of the case the plaintiff first called as a witness Henry Hackman, of whom I have spoken. Hackman, as I have said, was in the employ of the Michigan Central Railway Co., and was standing with his foreman a distance as he states of perhaps a couple hundred feet towards the point from which the train was coming. He was directed to proceed down, and he did so, as near as he could make the distance, some three hundred or four hundred feet, making a distance of five hundred or six hundred feet from the point where the rail was taken out, and met the train backing up. He said he stood about a car length from the train and gave a signal which he called a slow signal, by raising his arm up and down, and that was repeated by the brakeman, as I have already said, and the brakeman then took hold of the brake, and upon turning it partially he went off of the train. This man says he perceived no jar, heard no jar—no running together of the cars—at that time, but it looked to him as if the brakeman simply lost his hold and fell off, but how, of course, is merely a matter of opinion. The engineer was also put upon the stand, and testified. He testifies that when he first received a signal to slow down the train, he received it from this brakeman Shea, Shea being in a position on the train where the engineer could see him. They were on a slight curve, and the point along which he would look would be on the side of the curve, from which he was enabled to see

Railroad Co. v. Shea.

Shea. The signal that Shea gave him was what he calls a slow signal, and thereupon he commenced to slow down the train.. Soon thereafter the conductor, who was on top of the train, perhaps two cars away from the locomotive, according to the testimony of the engineer and fireman and of the conductor himself, gave a signal for a sudden stop, and thereupon the engineer put on his brakes and shut off steam, and threw sand on the track, and took steps to bring this train to a sudden stop, and it was brought to a stop. The conductor says at the time he gave this signal to stop suddenly that he received a like signal from the brakeman Shea, and that he repeated the signal which the brakeman Shea had given to him. That testimony is not varied by the testimony of any witness that I have discovered, who testified. That seems to have been substantially the condition of affairs, that so far as the engineer on that train was concerned he received two signals—one to stop slow, and he commenced to do it, and then another signal to stop suddenly. The one he received from Shea himself, the other he received from the conductor. There is no testimony to show that the person who had been sent back to give the signal—this man Hackman—gave what is denominated a hard signal. It was argued that the signal that he gave must have been the signal that was given by Shea. I am reminded, and perhaps it might as well come in here, that while these two signals, as I have said, were given before Shea fell off, as testified by Hackman, that Hackman testifies that after he fell, finding he was under the train and it was necessary to protect him—to endeavor to protect him—he started up upon the banks adjoining the cars, and then give a signal to stop, a hard signal. That signal was made to the conductor, and was repeated.

A rule of the Michigan Central Railway Co. was offered, which provides that when taking any rail out of the track on the line of the road certain notices shall be given, and if they are taken out of the track in any other portion of the road, a flag shall be sent back a distance of twenty-five telegraph poles. The court very properly charged the jury that the dispensing with this rule of the company, unless it was the proximate cause of the injury, would not of itself make the company liable. It was a matter of fact to be considered by the jury as to whether the railroad company was guilty of negligence or not. It has. been argued here that they should have sent back and placed that flag, and because they did not do it they should be held liable; or that the jury were authorized to find that there was a liability on the part of the company, and that it had been guilty of negligence. It seems to us that the situation of affairs, as far as the railroad company is concerned, is this: they were fixing this interlocking switch. It is claimed that the rule didn't apply to the Belt line, but whether it did or not, they were fixing this interlocking switch, and incidentally took out a rail. They didn't send any flag back, because they were to have it out but a short time, and were keeping a lookout for any cars or trains approaching. In that lookout they saw this train approach at a sufficient distance to give it all the notice that was required and all the notice that was needed, to enable the train to come to a stop, even assuming that they were not obliged to stop before reaching the crossing. They had all the time that was necessary for the train to come to a halt at a slow rate of speed. And they sent Hackman back who gave a notice to the brakeman, and that notice was a slow stop notice. We think there was no evidence before the jury that there was any negligence on the part of the railroad company directly contributing to the death of this decedent. We are

utterly unable to see from a very careful examination of the testimony of these various witnesses, upon what ground the jury could have proceeded to render a verdict against the defendant railway company ; and for the reason that the verdict is not sustained by sufficient evidence, the judgment will be reversed, and the case remanded for a new trial.

Mr. Scribner :

If I understand from your decision, if we had proved it was a hard signal, we would have made a case—that is, if there was such proof that would satisfy the jury that the signal was hard, and this train stopped suddenly?

Judge Haynes:

I don't know that I have discussed that in that form. Of course it might be a stronger case before the jury.

Mr. Scribner:

That would throw the whole burden on the company, giving the hard signal ?

Judge Haynes :

We won't say that, Mr. Scribner.